## SUPREME COURT.

JOHN M. BATTERMAN agt. ARCHIBALD FINN.

Where a defendant, the owner of a water power, is restrained by injunction—himself, his agents, servants, &c., from so using the water in the stream as to throw back water upon the wheels of the plaintiff's mill standing on the same stream—he cannot escape liability for a violation of the injunction, by leasing the premises to other parties, and informing them at the time that an *injunction is in force*—the lessees taking possession under the lease, and thereafter violating the injunction.

The lessees are the servants and agents in possession under the defendant; and so far as the relation of landlord and tenant is concerned, their possession is his possession; and although as landlord he would not ordinarily be liable for their wrongful and negligent acts as tenants, yet permitting and consenting to their going into possession, with a knowledge that the water power could not be profitably employed without infringing upon the plaintiff's rights and the injunction, he must be held in law as a participator and a privy to their acts. Besides, the circumstances of letting property thus situated, with full knowledge of a difficulty of such a character, should make him liable.

It being only by the authority of the defendant that the lessees had any rights whatever; and in assuming to control the water power, and in violating the express prohibition of the injunction, of which they had notice, they must be considered as his agents and servants, and as such amenable for their own acts; and although not named as *parties* individually in the action, yet they virtually are such. If agents and servants, they are clearly covered by the injunction; and the authorities which hold that an injunction can only issue against the parties, can have no application. The lessees should, therefore, be held liable for their violation of the injunction.

*Albany General Term, December,* 1864.
*Before* PECKHAM, MILLER *and* INGALLS, *Justices.*

APPEAL from two orders made at special term adjudging that the defendant and Rundle, one of the firm of Ruggles & Rundle, who hired the defendant's premises, and was in possession from first of ——, to about the 18th of July, 1862, and Guessner & Taylor, who were also the tenants of the defendant, and were in possession from October 1, 1862,

until the 18th day of October, 1862, were guilty of a contempt in violating the injunction order made in this action, restraining the defendant, his servants, agents, &c., from so using the water in the stream on which the plaintiff's mill stands, and his (defendant's) mill is located, as to throw back water upon the wheels of the plaintiff's mill.

R. W. Peckham, Jr., *for appellants and defendants.*
C. B. Cochrane, *for respondent and plaintiff.*

*By the court,* Miller, J. The injunction issued in this action, was personally served upon all the parties to this motion except Ruggles. Rundle left the possession of the premises soon after it was served, and Ruggles a few weeks after that. It was read to Ruggles by Rundle, immediately after the service. He said at the time that the injunction did not amount to anything; that he cared nothing about it, but should keep up the water as high as it had been, let the consequences be what they might. Repeatedly afterwards he made use of similar language. All the parties had frequent and repeated notice of its existence, and full knowledge of its authority; and those who were engaged in violating its commands, did so without any sort of excuse, and fully aware that in so doing they were guilty of an infringement upon the rights of the plaintiff. If, therefore, they escape the consequences of their own acts upon these motions, it must be upon the strictest technical grounds, and for the reason that the law furnishes no relief in such a case, by a proceeding in an action to which they are not parties. The defendant asks to be excused, because the other parties were his tenants. The latter claim exemption for the very same reason, and also because they are not nominally parties to the suit. If either are correct, then the plaintiff is remediless, unless he seeks other modes of redress besides the suit which he has instituted against the defendant, to protect and enforce his rights.

The original injunction issued in this action, was directed to the defendant and his agents, servants, &c., and if the other parties are embraced within its reach, they must be so held upon the ground that they were the *agents and servants* of the defendant, and connected with him in its violation.

An injunction to restrain proceedings at law, is usually directed to the defendant, his counsellors, attorneys, solicitors and agents; and an injunction to restrain waste, &c., is usually directed to the party, his servants, workmen and agents; consequently, if the counsellors, &c., of the party in the first case, or his servants, workmen or agents, in the second, having notice of the injunction, do anything inhibited by it, they will be held guilty of a contempt. (1 *Barb. Ch. Pr.* 634; 3 *Dan. Ch. Pr. and Pl.* 1907; *Lewis* agt. *Morgan,* 5 *Price,* 518.)

As to the defendant in this case, he was the owner of the premises, which he leased to the other parties, and had full knowledge of the injunction, and the difficulty in regard to the use of the water. He placed the other parties in possession, and received rent from them. At the time he hired the premises, he informed them that an injunction was in force. I think that this was not enough to exonerate him from liability for their unlawful acts. Knowing as he did all about the matter, if he had desired to protect himself, he should at least have required an indemnity against any violation of the order. Having the entire control, it was his duty to see that the order was not violated. He received the fruits for the use and enjoyment of the premises. The occupants were his servants and agents, in possession under him, and so far as the relation of landlord and tenant was concerned, their possession was his possession. Although as landlord, he would not ordinarily be liable for their wrongful and negligent acts as tenants, yet permitting and consenting to their going into possession as he did, with a knowledge that the water power could not be profitably employed without infringing upon the plaintiff's rights and the injunction, I think he must be held

a participator, and as a privy to their acts. In knowledge he was in privity with them. They had no rights except what were derived from him, and if he was permitted to confer upon them, directly or individually, authority to do what he was absolutely enjoined to refrain from doing, or if they were allowed to do so without authority, it would tolerate an entire evasion of the order of the court.

It is said that the defendant neither directed or advised the other parties to use the water improperly, but cautioned them against so doing. This is true in point of fact, and the result of the act itself, with the concomitant circumstances, including the changes of occupation within a very brief period, evinces that it was a perilous undertaking—a very doubtful enterprise, thus to place the property out of his hands. I think that he had reason to believe that the contingency would happen which actually did occur, and although not distintly manifest, yet an act of this kind might well be done for the very purpose of evading the order of the court. I also think that the circumstance of letting property thus situated, with full knowledge of a difficulty of this character, should make a party liable. The fact itself is sufficient to show *privity*, and to hold the party responsible for procuring the act to be done. If it can be sanctioned, then it is only necessary for a defendant thus enjoined, to relieve himself, by making an arrangement to put another party in his place, thus entirely disregarding and setting aside the power of the court. The defendant had no right thus to exempt himself from responsibility. If not an evasion in point of fact, it was so in law, so long as he was receiving an income for the unlawful use of the property.

In my opinion, it is no answer to say that the tenants could be sued alone for the injuries inflicted. Such a proceeding would seriously delay and embarrass the aggrieved party, and to a very great extent, prevent the successful accomplishment of the object intended by the suit in progress.

There is no good reason why a party should thus be driven

to seek a remedy against others who may have foisted themselves in by the consent of the defendant; and I am inclined to hold, that a party under an injunction restraining him from the commission of an alleged wrong, has no right to divest himself from its efficacy and effect by introducing new parties, from whom he is in the receipt of a recompense, and who in the face of light and knowledge, duly advised of the rights of others, persist in pursuing a course of conduct for which he has been enjoined. The fact itself that they do so, makes him amenable for their conduct, and it must be assumed that ·it is done with his privity, knowledge and assent. If the defendant had parted absolutely with his title, retaining no interest whatever, and received no rent for the wrongful use of the premises, it would have altered the case very materially; but as such was not the fact here, he is not entitled to avail himself of a supposed case which does not actually exist.

As to the other parties: they were tenants, paying rent, fully advised of the existence of the injunction. They have not the advantage of pleading ignorance of the plaintiff's rights. They were in possession under the defendant, assuming to control the premises by virtue of his license and permission. In privity with him they took possession, ostensibly for the purpose only of enjoying and exercising his legal rights, and violated the injunction, fully advised of the plaintiff's rights. They had no authority except under their lease thus to act, and if they were wrong-doers, they were made such by the act of the defendant in introducing them to such a position. It was by the defendant alone that they were placed in such an attitude, by means of which they infringed upon the plaintiff's rights, and without his consent they had no power whatever. They were not intruders, who could be regarded as trespassers *de novo*, because they acted under a license from the defendant. They were there by authority, the chosen representatives of the defendant, in the use of the water power; his agents and servants, to whom the injunction

Batterman agt. Finn.

was especially directed, and were controlled by, and embraced within its mandates. The defendant had placed them there, informing them at the time of the existence of the injunction. It was only by his authority that they had any rights whatever, and in assuming to control the water power, and in violating the express prohibition of the injunction, I think they must be considered as his agents and servants, and as such amenable for their own acts. Although not named as parties individually, yet they virtually were such. If agents and servants, they were clearly covered by the injunction, and the authorities which hold that an injunction can only issue against the parties, can have no application.

If it were otherwise, an injunction could easily be avoided by placing other persons in possession of property; multiplicity of suits would be necessary to enforce it, and its main object frustrated and put at defiance. While care and caution should be observed in issuing orders of this character, yet when a case is made out which authorizes the granting of an injunction, and it is issued and served, courts should see that it is strictly enforced, and that its object is not thwarted by legal artifice, or by subterfuge.

The injunction in this case appears to have been served personally upon all but one of the parties, and he had full notice of it. It is not, however, in my opinion, essential that the service should have been personal upon the tenants, by the delivery of a copy, and by showing the original, in order to bring them into contempt. Regarding them as parties, as they really were, being the agents and servants of the defendant, it was quite sufficient that they had notice. If the defendant or his attorney is present in court when the motion is made, the party may be held liable for a contempt. (2 *Mad. Ch. Pr.* 225.) And when an order is served upon the solicitor, if knowledge of such service is brought home to the party, he will be in contempt for not obeying the order, in the same manner as if it had been served on him personally. (4 *Pa.* 405.)

The tenants here disobeyed the injunction, to the annoyance and great injury of the plaintiff, without any kind of an excuse, and I see no good reason why they should not be held liable. They were not third parties, strangers to the original injunction, but came in by the procurement of the defendant, and assumed to control the water power, the same as if originally owners of it.

Where parties act thus, with an entire understanding of the facts, as was done in this case, there is no harshness in holding them to a rigid and strict accountability. They have committed the injury; there is no doubt of their liability in some form, and as they have been fully heard before the referee appointed for that purpose, they have no reason to complain that another suit has not been instituted to obtain redress. They have not the same claims to exemption and to consideration, which the court will always accord to innocent parties, and if compelled to make remuneration for the damages done, it is only a necessary consequence of their own illegal and deliberate acts.

The principle involved in this case is of considerable importance, and unless it can be upheld, the process of injunction will become an idle ceremony, impotent for any good purpose. A party may easily free himself from its restraint by substituting others in his place, without incurring any responsibility. And those thus substituted, although fully advised of all the facts at the time, may also escape by insisting, as is done here, that a new proceeding shall be instituted to bring these parties before the court.

I see no justice, propriety or legality in such lame and impotent excuses, and am satisfied that there was no error in the decision of the special term.

The orders should, therefore, be affirmed, with costs of the appeal, upon each motion.